# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| **YARY PACHECO,**<br><br>*Plaintiff,*<br><br>v.<br><br>**JOHNSON & JOHNSON,** *et al.,*<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**3:24-cv-00002-TES** |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On January 11, 2024, Plaintiff Yary Pacheco filed a products liability action against Defendants, alleging that she suffered long-term medical injuries and financial loss as a result of the implantation of Defendants' TVT-O pelvic mesh product in 2010.[1] [Doc. 1, p. 5, ¶¶ 22–26]. Defendants subsequently filed this Motion to Dismiss, arguing that the Court should dismiss Plaintiff's Complaint, first, because the Complaint is a shotgun pleading and, second, because Plaintiff's counts each

---

[1] Plaintiff originally filed suit in Missouri on February 8, 2017, but according to Defendants, her case was transferred as part of a Multi-District Litigation in which she was allowed to dismiss her claims without prejudice. *See* [Doc. 7-1, p. 2]; [Doc. 7, p. 2 n.1]. Neither Plaintiff's Complaint nor her Response to the Defendants' Motion to Dismiss address the procedural history of this case. *See generally* [Doc. 1]; [Doc. 21]. There is no documentation on the docket showing when she was allowed to dismiss her claims nor anything explaining the delay in bringing this action on January 11, 2024—seven years after she first brought her claims in Missouri court. And, to be fair, Defendants never complained about any potential running of the applicable statute of limitations as to the suit in general. *See infra* note 2.

individually fail for various reasons.[2] *See generally* [Doc. 7]. In her Response, Plaintiff argues that the Court should deny Defendants' Motion, but in the alternative, asks for leave to amend to cure any deficiencies. [Doc. 21, p. 7].

After careful consideration, the Court **GRANTS** Defendants' Motion [Doc. 7] to the extent that it argues Plaintiff's Complaint is a shotgun pleading and **STRIKES** Plaintiff's Complaint [Doc. 1]. However, the Court will provide Plaintiff with the opportunity to amend her Complaint **within 14 days** to cure her deficiencies. If Plaintiff fails to amend her Complaint, the Court will formally dismiss the action. Should Plaintiff elect to file an amended complaint, Defendants may file a new motion to dismiss as they see fit. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

## **FACTUAL BACKGROUND**[3]

To treat her stress urinary incontinence ("SUI"), Plaintiff underwent a surgery

---

[2] Specifically, Defendants contend that Counts I (negligence), II (design defect), III (manufacturing defect), IV (failure to warn), and VIII (gross negligence) fail to state a claim for relief and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 7, pp. 6–18]. Defendants further argue that Counts V and VI (breach of express and implied warranty, respectively) are untimely. [*Id.* at pp. 18–20]. Finally, Defendant points out that the Court should dismiss Plaintiff's Counts VII (discovery rule, tolling, and fraudulent concealment) and Count IX (punitive damages) because they are not independent causes of action. [Doc. 7, p. 20].

[3] The following facts are taken from Plaintiff's Complaint [Doc. 1] and are assumed to be true for the purpose of ruling on the Motion before the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that when ruling on a 12(b)(6) motion, courts must accept the facts set forth in the complaint as true).

on June 18, 2010, in which she was implanted with the product at issue, a TVT-O pelvic mesh product "designed, manufactured, packaged, labeled, and sold by Defendants." [Doc. 1, p. 5, ¶¶ 22–25]. Plaintiff's surgery went off without a hitch, with no complications, but at some point after the implant, Plaintiff began experiencing mesh erosion and exposed mesh, among other symptoms, that led her to needing corrective surgery. [*Id*. at p. 5, ¶ 26].

Plaintiff details numerous facts about Defendants' product and its risks. Under Count I (negligence), Plaintiff includes a non-exhaustive list of 14 ways in which the product was "was unreasonably dangerous and defective," without explaining which of these dangers caused her injuries. *See* [*id*. at pp. 6–7, ¶ 34]. In Count II (design defect), Plaintiff includes another non-exhaustive list of nine ways in which the product was defective. [*Id*. at pp. 10–11, ¶ 49]. She does not specify in Count II which defects affected her. *See* [*id*.]. In Count IV (failure to warn), Plaintiff alleges numerous risks that Defendants failed to warn the public about, but she does not say which of these risks ultimately manifested in her injuries. [*Id*. at pp. 14–16, ¶¶ 69–70].

According to Plaintiff, Defendants falsely advertised the product to the public and medical community as a safe SUI treatment, including in "reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial media." [*Id*. at p. 18, ¶¶ 84–86]. She "could not have" discovered the defect(s) "until recently" and did not know about Defendants' misrepresentations

at the time they were made. [*Id.* at pp. 5–6, 19, 21, ¶¶ 27, 29, 89, 105].

## **LEGAL STANDARD**

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to the plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). A complaint survives a Rule 12(b)(6)-based motion only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

Because Defendant's first argument for dismissal is that Plaintiff's Complaint, in its entirety, is a "shotgun pleading," let's unwrap what it means to label a pleading a shotgun pleading. [Doc. 7, p. 2]. Federal Rules 8(a)(2) and 10(b) work together to serve at least two critical functions. First, these rules require plaintiffs to present their claims "discretely and succinctly" so that defendants can understand what they are "claiming and frame a responsive pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir. 1985)). Second, they allow courts to "determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Id.*

Rule 8(a)(2) requires a plaintiff to draft her complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8 does not require detailed factual allegations, it requires

Plaintiff to provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). Similarly, Rule 10(b) requires a plaintiff to draft her complaint to "state [her] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Furthermore, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

Given the importance of these pleading requirements, "complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland*, 792 F.3d at 1320. "[C]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). In fact, the Eleventh Circuit has repeatedly reminded litigants (and district courts) that tolerating a shotgun pleading is akin to "tolerat[ing] obstruction of justice." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). Because a district court suffers serious ramifications if it doesn't require a plaintiff to follow the most basic

6

pleading requirements,[4] a district court has a "supervisory obligation" to direct a plaintiff to better plead her complaint in a manner that complies with federal pleadings requirements. *Hayden v. Wells Fargo Home Mortg.*, No. 1:10-CV-2153-CAP-ECS, 2010 WL 11647492, at *2 (N.D. Ga. Oct 29, 2010); *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (discussing shotgun pleadings as complaints that "fail[] to adequately link a cause of action to its factual predicates").

Thus far, the Eleventh Circuit Court of Appeals has identified four types of "shotgun pleadings." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019). Such complaints are characterized by:

> (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Id.* However, "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim

---

[4] *See, e.g.*, *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."); *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard.")).

rests." *Weiland*, 792 F.3d at 1323. The inherent issue with shotgun pleadings is that they require the district court, as well as all named defendants, to "cull through [all factual] allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claims." *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011).

In their Motion to Dismiss, Defendants argue that Plaintiff's Complaint matches the second and fourth types of shotgun pleadings. [Doc. 7, p. 3]; *see McDonough*, 771 F. App'x at 955. Defendants also move to dismiss on the grounds that Plaintiff's design defect, manufacturing defect, failure to warn, negligence, and gross negligence claims fail individually to state a claim for relief under Rule 12(b)(6). [Doc. 7, pp. 6–18]. However, because the Court finds that Plaintiff's Complaint is a shotgun pleading, the Court will refrain from ruling on the merits of her claims individually unless and until Plaintiff amends her complaint and Defendants file a new motion to dismiss.[5] The Court now turns to its reasons for finding Plaintiff's Complaint to be a shotgun pleading.

---

[5] The Eleventh Circuit urges district courts to give litigants a chance to amend in most circumstances—even where a party fails to request leave to amend. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Here, in Plaintiff's Response to the Defendants' Motion to Dismiss, Plaintiff asked for leave to amend in the event that the Court found her Complaint to be a shotgun pleading. [Doc. 21, p/ 2]. Therefore, the Court will afford her a chance to amend and provide her with reasons her Complaint is deficient. *See Vibe Micro*, 878 F.3d at 1296 ("In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings.").

**DISCUSSION**

1.  **Shotgun Pleading**

Plaintiff's Complaint contains several problems. First, while the Complaint tells of the numerous alleged problems with the product and supposed associated risks, its individual counts contain very little information specific to her or how this product supposedly affected her. For example, under Count VIII (gross negligence), Plaintiff lists a hefty catalogue of dangers that the product poses to women in general:

> The injuries, conditions, and complications suffered *by women* who have been implanted with Defendants' Product include, without limitation: mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia, blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence the recurrent prolapse of organs, and, in many cases, the women have been forced to undergo intensive medical treatment including, but not limited to, operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia.

[Doc. 1, p. 23, ¶ 109 (emphasis added)]. But nowhere in Count VIII does Plaintiff let the Defendants know which of these supposed dangers caused *her* to suffer. *See* [Doc. 1, pp. 22–24]. All of them? Some of them? Which ones? The Court can't tell.

Moreover, she consistently scattered the same kind of deficiency throughout the Complaint. Under Count I (negligence), Plaintiff alleges 14 defects of the product. [*Id*. at pp. 6–7. ¶ 34]. But nowhere in Count I does Plaintiff explain which specific defect(s) caused her particular injuries. *See* [*id*. at pp. 6–10 (alleging that Defendants failed to

9

warn "Plaintiff and her healthcare providers *and other foreseeable users*" of the TVT-O product's risks) (emphasis added)]. Plaintiff does the same in Counts II and III (design and manufacturing defects), as well as in Count IV (failure to warn), where she lists ways in which Defendants allegedly failed to provide adequate warning without explaining which unwarned defect(s) caused her injuries. *See* [*id*. at pp. 14–16, ¶¶ 68–73].

The only place where Plaintiff discusses her own interaction with the TVT-O product and alleged injuries from it are in her "Common Facts" section before she attempts to detail her individual causes of action. [*Id*. at pp. 5–6, ¶¶ 22–29]. Right off the bat, it should be noted that the only Plaintiff-specific facts in the "Common Facts" section are that (1) Plaintiff received the implant in June 2010 in Athens, Georgia, (2) to treat her SUI (3) via a surgery without complication, (4) at some point after which, she suffered from numerous injuries, including mesh erosion and corrective surgery. [Doc. 1, p. 5, ¶¶ 22–24, 26]. To be candid, those four facts make up the vast majority, if not all, of the only facts specific to Plaintiff throughout the entire Complaint.

But what's more problematic is that it is unclear which "Common Facts" apply to which counts. Plaintiff does not reference the "Common Facts" section—nor any of its numbered paragraphs—in her counts, nor does she incorporate the (albeit meager)

10

Plaintiff-specific facts in any of her counts.[6] Hence, both the Court and the Defendants are left wondering which "Common Facts" apply to which counts. *See* [Doc. 7, p. 5 (quoting *Smith v. Perry*, No. 5:22-CV-00044-TES-TQL, 2022 WL 1469529, at *12 (M.D. Ga. May 10, 2022))]. Without any of the "Common Facts," the discussion under each count as to Plaintiff in particular is limited to vague statements such as: "The product implanted in Plaintiff was not reasonably safe for its intended use . . . ." [Doc. 1, p. 12, ¶ 56]; *see e.g.*, [*id*. at p. 6, ¶ 34 (similar)]; [*id*. at p. 10, ¶ 49 (similar)]; [*id*. at p. 14, ¶ 69 (similar)].

In *Thornton v. Astrazeneca Pharmaceuticals LP*, the Northern District of Georgia found a plaintiff's complaint to be a shotgun pleading where it regurgitated facts about the product, the number of Americans who take it, and the alleged risks involved—without claiming anything in particular to the plaintiff or her injuries. No. 1:17-CV-653-SCJ, 2017 WL 2255776, at *2 (N.D. Ga. May 15, 2017). The court noted that "of 154 paragraphs, fewer than 10 . . . [were] dedicated to the specific circumstances of [the plaintiff]." *Id*. at *4 (internal quotations omitted). Additionally, nowhere did the plaintiff tie her ingestion of the medication to her alleged injuries (kidney issues) "more securely than by blithely insisting that she suffered the latter 'as a result of' the former. Plaintiff's Complaint is comparable. *See* [Doc. 1, p. 26 ("As

---

[6] Granted, Plaintiff did "incorporate[] by reference all prior paragraphs" into Count VI (breach of implied warranty). [Doc. 1, p. 20, ¶ 96]. But this is problematic in its own right, as the Court will discuss below.

11

a direct and proximate result of Defendants' conduct and omissions, Plaintiff has suffered . . . multiple severe and painful personal injuries . . . .")]. Without allegations specific to Plaintiff's experiences and injuries listed under each count, it is impossible for the Defendants and the Court to know what she is claiming that discovery will reveal. *See also Twombly*, 550 U.S. at 556 (explaining that a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim). As it currently sits, Plaintiff's Complaint is just a "textbook one-size-fits-all-form complaint" with limited facts about Plaintiff in particular and the bulk being general factual allegations about Defendants and their product. *See Moreno v. Ethicon Inc.*, No. 4:20-CV-04372, 2022 WL 831548, at *1 (S.D. Tex. Mar. 17, 2022) (a case against the same defendants and the same product as here).

In response, Plaintiff cites *Goodling v. Johnson & Johnson*—another case against these Defendants regarding their pelvic mesh product—but in which the Middle District of Pennsylvania held that the complaint was *not* a shotgun pleading just because it focused largely on the shortcomings of the product generally and provided "comparatively little information about [the plaintiff's] procedure and injuries." *Goodling v. Johnson & Johnson*, No. 4:21-CV-00082, 2022 WL 414285, at *3 (M.D. Pa. Feb. 10, 2022); *see* [Doc. 21, p. 6]. But in that case, the plaintiff's complaint included information about her meeting with her doctor, who she even specified by name and who she alleged made assurances to her about the product's safety. *Goodling*, 2022

12

WL 414285, at *1. Here, Plaintiff alleges only that she received the implant via a surgery in 2010 and suffered injuries as a result.[7] [Doc. 1, p. 5, ¶¶ 22–26]. And again, these—the most specific of Plaintiff's allegations—are contained in the untethered "Common Facts" section, not under the individual counts. *See* [*id.*].

Next, Defendants argue that Plaintiff's Complaint "fails to differentiate between the two Defendants" and "lump[s] [them] together as 'Defendants' without any allegations specifying which Defendant[] is purportedly responsible for which act or omission." [Doc. 7, p. 5]. And indeed, Defendant is correct. Plaintiff argues that because her Complaint alleged that Ethicon is a subsidiary of Johnson & Johnson, this argument holds no weight. [Doc. 21, p. 7]; [Doc. 1, p. 1, ¶ 3]. That type of shotgun pleading, Plaintiff contends, only exists when the defendants are "a large and diverse group" such that the complaint "leav[es] unclear just who is alleged to have committed which acts." [Doc. 21, p. 7 (quoting Bolling v. Mercedes-Benz USA, LLC, No. 1:23-CV-671-TWT, 2024 WL 371876, at *7 (N.D. Ga. Jan. 30, 2024))]. But Plaintiff's Complaint insufficiently pleads the relationship between the Defendants and the alleged conduct.

In *Amin v. Mercedes-Benz USA, LLC*, the Northern District of Georgia held that

---

[7] To be sure, Plaintiff's Complaint does contain vague statements alluding to the idea that there is a physician involved in her treatment with the product, such as, "Plaintiff, individually, and/or by and through her physician, reasonably relied upon Defendants' express warranties and guarantees that the Product was safe . . . ." [Doc. 1, p. 19, ¶ 92]. But this statement is too vague and conclusory for the Court to draw anything of substance from it.

13

the plaintiff adequately distinguished between two defendants by alleging that the first defendant "directed and acted through its wholly-owned subsidiary" (the second defendant), and that the second defendant acted as the first's "agent for purposes of marketing, sales, warranty claims and customer relationships." 349 F. Supp. 3d 1338, 1352 (N.D. Ga. 2018). Although our Plaintiff does allege that Ethicon is a subsidiary of Johnson and Johnson, the Complaint does not allege that Ethicon is the manufacturer. *See generally* [Doc. 1]. Nor does it provide any "notice of what role any of the Defendants played." *Brazil*, 249 F. Supp. 3d at 1337. Instead, it only generically states under Count III (manufacturing defect), that "*Defendants* designed, manufactured, prepared, assembled, marketed, labeled, distributed and sold the Product" and under the "Common Facts" section, that "*Defendants* designed, manufactured, prepared, assembled, marketed, labeled, distributed and sold the Product. [Doc. 1, pp. 1, 4, ¶¶ 3, 17 (emphases added)]; *see Brazil v. Janssen Rsch. & C*, 249 F. Supp. 3d 1321, 1337 (N.D. Ga. 2016). Plaintiff fails to allege that Johnson & Johnson directed the activities of Ethicon or that Ethicon acted as Johnson & Johnson's agent, nor does Plaintiff distinguish between Defendants and their actions in any way. *See Amin*, 349 F. Supp. 3d at 1352.

    Finally, Plaintiff argues that because litigation over the very product at issue in this case "has proceeded for over a decade with Ethicon, Inc., and Johnson & Johnson as co-Defendants," Defendants have little room to argue that they are confused about

what Plaintiff is claiming. [Doc. 1, p. 1. ¶ 3]; *see Twombly*, 550 U.S. at 555. But Plaintiff cannot rely on the pleadings in other cases. She must properly plead her own case.

After arguing that Plaintiff's Complaint is a shotgun pleading, Defendants then provide additional, independent reasons that each of Plaintiff's counts fail to state claims for relief or are otherwise barred. [Doc. 7, pp. 6–19]. The Court will address Defendants' argument that Plaintiff's breach of warranty claims (Counts V and VI) are time-barred. But because the Court found that Plaintiff's Complaint is a shotgun pleading and is providing her an opportunity to amend, the Court will not address the merits of her other individual claims unless and until she amends her Complaint and Defendants file a new motion to dismiss based on the allegation in the amended complaint.

2. **Breach of Warranty Claims**

Defendants argue that Plaintiff's Count V (breach of express warranty) and Count VI (breach of implied warranty) should be dismissed as untimely under O.C.G.A. § 11-2A-506.[8] [Doc. 7, p. 19]. Specifically, Defendants argue that Plaintiff was required to assert her breach of warranty claims within four years after she received the implant in 2010. [*Id*. (citing O.C.G.A. § 11-2A-506(2))]. Because Plaintiff did not file her initial action until 2017, her claims—according to Defendant—are time-barred. [*Id*.].

---

[8] Defendants also argue that Plaintiff had not adequately pled essential elements of a breach of warranty claim (facts supporting privity of contract, representation, and breach), but because the Court is deferring ruling on the merits of the claims, the Court will only now address the timeliness issue. *See* [Doc. 7, p. 19].

15

In Response, Plaintiff argues that the Georgia statute that Defendants ignored a crucial piece of that Georgia statute, which provides an exception: "[W]here a warranty *explicitly* extends to future performance of the goods," the cause of action doesn't accrue until a plaintiff discovers or should have discovered the breach. [Doc. 21, p. 18]; O.C.G.A. § 11-2A-506(2) (emphasis added). Plaintiff is correct insofar as she argues that this exception applies to warranties that "*explicitly* extend[] to future performance of the goods." O.C.G.A. § 11-2A-506(2) (emphasis added). In other words, her breach of express warranty claim (Count V) could potentially survive the statute of limitations *if* her amended complaint adequately pleads that she filed her 2017 action within four years of discovering the defect(s). *See id*. But Defendant is correct that her breach of implied warranty claim (Count VI) does not fall under the Georgia statute's exception and must be dismissed. *See* [Doc. 22, p. 9].

Plaintiff's amended complaint may not include a breach of implied warranty claim. It may, however, include a breach of express warranty claim that adequately pleads "the format, timing, or language used" and allegations about when Plaintiff discovered the alleged breach. *See Bergman v. Johnson & Johnson*, No. CV 20-2693 (JRT/HB), 2021 WL 3604305, at *5 (D. Minn. Aug. 13, 2021) ("Without more specific allegations of what Defendants warranted to Plaintiffs, the Court cannot toll the statute of limitations or conclude that Plaintiffs have pleaded factual allegations above a conclusory level.").

## CONCLUSION

While Plaintiff's Complaint isn't the most egregious shotgun Complaint this Court has seen, it still amounts to a "drive-by" complaint that the Court cannot allow. Plaintiff must amend her Complaint to meet the pleading requirements of the Federal Rules of Civil Procedure as fleshed out by Eleventh Circuit precedent. Based on the foregoing reasoning, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 7] on shotgun-pleading grounds, **STRIKES** Plaintiff's Complaint [Doc. 1], and **ORDERS** Plaintiff to replead her Complaint **within 14 days** of the date of this Order—or **by April 29, 2024**. If Plaintiff fails to amend her Complaint by the deadline, the Court will dismiss the case.

Because Plaintiff has agreed to dismiss Counts VII (discovery rule, tolling, and fraudulent concealment) and Count IX (punitive damages) as independent claims, she should not include those in her amended complaint. *See* [Doc. 21, p. 20]. And because O.C.G.A. § 11-2A-506(2)'s tolling provision does not apply to Plaintiff's breach of implied warranty claim, her amended complaint may not include it either.

**SO ORDERED**, this 15th day of April, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**